UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
PAUL ENGEL, on behalf of himself and all
others similarly situated,

                                    Plaintiff,

                    -against-

SCULLY & SCULLY, INC.,

                                    Defendant.
-----------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9-14-11

10 Civ. 3167 (PKC)

MEMORANDUM
AND ORDER

P. KEVIN CASTEL, District Judge:

   Plaintiff Paul Engel brings this putative class action against defendant Scully &

Scully, Inc., under the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. §

1681c(g). Engel has moved for class certification under Rule 23, Fed. R. Civ. P., and the

defendant opposes and moves to dismiss under Rule 12(b), Fed. R. Civ. P. For the reasons

below, the defendant's motion to dismiss is denied in part and granted in part, and the

plaintiff's motion for class certification is granted.


BACKGROUND

   On December 4, 2003, Congress enacted FACTA, which provides that "no

person that accepts credit cards or debit cards for the transaction of business shall print more

than the last 5 digits of the card number or the expiration date upon any receipt provided to the

cardholder at the point of the sale or transaction." 15 U.S.C. § 1681c(g)(1). This provision

applies only to electronic receipts, and not to handwritten or imprint copy receipts. Id. at §

1681c(g)(2). The statute became effective on December 4, 2006, for those receipt-printing

machines put into use before January 1, 2005, but was effective December 4, 2004, for any

such machine put into use after January 1, 2005.  Id. at § 1681c(g)(3).

Scully & Scully, Inc., is a New York home furnishings retailer.  Engel alleges that he made a purchase at the defendant's business using a credit card, and that he received an electronically printed receipt displaying all sixteen digits of his credit card number, as well as the card's expiration date.  (Am. Compl. ¶ 8, Engel Aff. ¶¶ 6-7.)  He alleges on behalf of the putative class that it was the defendant's regular business practice to print such receipts and provide them to consumers.  (Am. Compl. ¶¶ 26–27.)

Engel did not attach a receipt to the complaint, but in connection with his motion for class certification he submitted a copy of the receipt and a declaration, which states that he purchased merchandise from the defendant and received a receipt which did not truncate his credit card number or expiration date.  The receipt submitted on this motion by the plaintiff displays all sixteen digits of the credit card number (redacted for filing per Rule 5.2(a), Fed. R. Civ. P.), and the expiration date.  (Declaration of Joseph Goljan dated Jan. 26, 2011 ("Goljan Decl."), Exh. 1.)[1]  At the bottom of this receipt, the words "Merchant Copy" are printed.  (Id.)

Engel also submitted the affidavit of Stephen O. Robinson, a former employee of Scully & Scully.  (Goljan Decl., Exh. 3 ("Robinson Aff.").)  Robinson was employed by the defendant as a sales associate from September 2007 until April 2010.  (Robinson Aff., ¶ 2–3.)  He affirms, based on personal knowledge, that under the "standard procedure for each sale" using a debit or credit card in defendant's store, a sales employee would use one of three processing machines to electronically print "two identical receipts containing all sixteen (16) digits of the customer's credit or debit account number as well as the credit or debit card's

---

[1] The receipt itself is dated April 5, 2010, but the affidavit of Paul Engel states that he made his purchase on April 5, 2009.  (Goljan Decl., Exh. 2 ("Engel Aff.").)  The date in the affidavit is likely a typographical error, and I assume for purposes of this motion that the purchase in question was made April 5, 2010.

expiration date." (<u>Id.</u> at ¶¶ 6, 8.b.)  Robinson further states that "[o]n both copies of the electronically printed receipt, the words 'merchant copy' appear." (<u>Id.</u>)  He also affirms that on at least three occasions he notified the defendant's management that it was violating FACTA. (<u>Id.</u> at ¶ 20.)

       The defendant submitted the declaration of a Scully & Scully employee, Tomas Villanueva.  (Declaration of Tomas Villanueva dated March 7, 2011 ("Villanueva Decl.").)  Villanueva was the defendant's comptroller from April, 1995 through October 2009. (Villanueva Decl., ¶ 2.)  Since October 2009, he has worked part-time for the defendant, but his position of employment is not specified.  (<u>Id.</u>)  He states that "[a]t the time [he] stopped working full time, the machines printed out two receipts, one labeled merchant copy and the other labeled customer copy.  The customer copy was truncated so that all the digits on the credit card number [did] not appear." (<u>Id.</u> at ¶ 5.)  He does not specify the source of his knowledge, and does not state whether he worked on the sales floor of the store or personally used the receipt-printing machines.  Finally, he states that "the only change in [the sales] procedure that I am aware of occurred sometime in 2010, when Scully got new machines that truncate the merchant copy receipt in addition to customer copy receipt." (<u>Id.</u> at ¶ 6.)


DISCUSSION

    I.     Motion to dismiss

       Defendant moves to dismiss the complaint under Rules 12(b)(1) and 12(b)(6), Fed. R. Civ. P., arguing that there is no subject matter jurisdiction because the plaintiff lacks standing to bring his claim, and that the plaintiff fails to state a claim upon which relief can be granted.  Both the standing and merits arguments assert that the plaintiff's claim fails because

the words "Merchant Copy" appear on the receipt provided to the plaintiff.  I conclude that despite this fact, the plaintiff has standing and has stated a claim upon which relief can be granted.

      a.  Legal Standard

        Rule 8(a)(2), Fed. R. Civ. P., requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)) (ellipsis in original).  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must provide the grounds upon which the claims rest, through factual allegations sufficient to raise a right to relief above the speculative level. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Twombly, 127 S.Ct. at 1965).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, ___ U.S. ____, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).  "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Id.  Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" do not suffice to state a claim, as "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 1949–50. The Supreme Court has described the motion to dismiss standard as encompassing a "two-pronged approach" that requires a court first to construe a complaint's allegations as true, while not bound to accept the veracity of a legal conclusion couched as a factual allegation. Id. Second, a court must then consider whether the complaint "states a plausible claim for relief,"

which is "a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense."  Id.

        In considering a motion to dismiss under Rule 12(b)(6), the Court is limited in

its consideration to the facts stated in the complaint, and material outside the pleadings will not

be considered with respect to the motion to dismiss.  Friedl v. City of New York, 210 F.3d 79,

83–84 (2d Cir. 2000) ("[W]hen matters outside the pleadings are presented in response to a

12(b)(6) motion, a district court must either exclude the additional material and decide the

motion on the complaint alone or convert the motion to one for summary judgment under Fed.

R. Civ. P. 56 and afford all parties the opportunity to present supporting material." (internal

quotations omitted)).  The Court may consider exhibits or documents incorporated by reference

into the complaint, however, without converting the motion into one for summary judgment.

See Int'l Audiotext Network, Inc. v. AT & T, 62 F.3d 69, 72 (2d Cir. 1995).

        When deciding a motion to dismiss pursuant to Rule 12(b)(1), Fed. R. Civ. P., a

district court "may resolve disputed factual issues by reference to evidence outside the

pleadings, including affidavits."  State Employees Bargaining Agent Coalition v. Rowland, 494

F.3d 71, 77 n.4 (2d Cir. 2007).  The plaintiff has the burden to demonstrate that it has standing

to bring a claim, and "each element [of standing] must be supported in the same way as any

other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree

of evidence required at the successive stages of the litigation."  Carver v. City of New York,

621 F.3d 221, 225 (2d Cir. 2010) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 561

(1992)).  Here, "[b]ecause standing is challenged on the basis of the pleadings, [the Court must]

accept as true all material allegations of the complaint, and must construe the complaint in

favor of the complaining party."  Carver, 621 F.3d at 225 (internal quotations omitted)).  At the

same time, "it is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." Warth v. Seldin, 422 U.S. 490, 501 (1975).

     b.  Standing

     "Standing is a federal jurisdictional question 'determining the power of the court to entertain the suit.'" Carver, 621 F.3d at 225 (quoting Warth, 422 U.S. at 498). The Court must determine "'whether the plaintiff has made out a case or controversy between himself and the defendant within the meaning of Art. III,' and is therefore 'entitled to have the court decide the merits of the dispute or of particular issues.'" Amnesty Intern. USA v. Clapper, 638 F.3d 118, 131 (2d Cir. 2011) (quoting Warth, 422 U.S. at 498). There are three Article III standing requirements: (1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision. Lujan, 504 U.S. at 560–61. In a class action, once standing is established for a named plaintiff, standing is established for the entire class. Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, 504 F.3d 229, 241 (2d Cir. 2007).

     In determining whether the plaintiff has alleged an injury-in-fact, "[t]he critical question is whether 'the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant his invocation of federal-court jurisdiction.'" Amnesty Intern., 638 F.3d at 132 (quoting Summers v. Earth Island Inst., 555 U.S. 488 (2009) (emphasis in original)). In certain situations, "'the actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.'"

Kendall v. Employees Retirement Plan of Avon Products, 561 F.3d 112, 118 (2d Cir. 2009) (quoting Warth, 422 U.S. at 500). "'The standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief.'" Id. (quoting Warth, 422 U.S. at 500). Even where, as here, the injury exists solely by virtue of a statute, "standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." Warth, 422 U.S. at 500.

> Plaintiff has alleged facts adequate to create standing, whether or not he has stated a claim for violation of FACTA. Congress created a private right of action for consumers to sue businesses for FACTA violations. 15 U.S.C. § 1681o ("Any person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer . . . ."); Id. § 1681n ("Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer . . . ."). Plaintiff alleges that he is a consumer who made a purchase at defendant's store, and that he "received from Defendant a computer-generated transaction receipt which displayed all 16 digits of [his] credit card as well as the card's expiration date." (Am. Compl. ¶ 8.) Plaintiff has therefore alleged an injury-in-fact and a causal connection between that injury and the conduct at issue. The fact that the receipt provided to the plaintiff was labeled "Merchant Copy" has no bearing on his standing to bring a claim. He is a proper party to bring this suit, as a consumer alleging a statutory violation because his credit card number was not truncated. The potential availability of a defense or affirmative defense does not destroy Article III standing. See Levine v. AtriCure, Inc., 508 F. Supp. 2d 268, 276 (S.D.N.Y. 2007) (plaintiff had constitutional standing where he alleged that he was injured

due to defendants' conduct, "subject, of course, to an affirmative defense that this was not the case.").

Whether or not this Court considers the Robinson and Villanueva affidavits, this outcome is the same. Villanueva's affidavit does not reveal whether he has personal knowledge of the matters to which he attests. Even assuming he does, his general averments, that he has "always known Scully & Scully to be compliant with all applicable law" and that "[a]t the time [he] stopped working full time" the receipt printing machines were in compliance, are not specific enough to counter the detailed Robinson affidavit. Robinson's affidavit is based on personal knowledge and specifies the sales procedure employed from at least September 2007 until April 2010. Together with the non-truncated receipt attached as Exhibit 1 to the Goljan Declaration, the plaintiff has carried his burden of demonstrating that he has standing to bring a claim of a willful FACTA violation.

### c.   Failure to State a Claim

Defendant also moves to dismiss under Rule 12(b)(6), Fed. R. Civ. P., making the same argument that because the receipt provided to the plaintiff was labeled "Merchant Copy," plaintiff has failed to state a claim that defendant violated FACTA. I conclude that the plaintiff has adequately pled a willful violation of FACTA, but has not adequately pled a negligent violation.

Plaintiff alleges that he "received from Defendant a computer-generated transaction receipt which displayed all 16 digits of [his] credit card as well as the card's expiration date." (Am. Compl. ¶ 8.) Defendant argues that because the receipt was labeled as a

"Merchant Copy," plaintiff's claim fails as a matter of law.[2]  Defendant cites to several cases which have held that a plaintiff cannot sustain a FACTA claim based upon a merchant's copy of a receipt.  However, in each of those cases, the merchant's copy receipt was mistakenly provided to or retained by the customer.  It is undisputed that a merchant may retain receipts containing non-truncated account numbers or expiration dates.  Here, the plaintiff alleges that it was defendant's regular business practice to print two receipts without truncating the credit card number or expiration date on either, and to provide one to the customer.  (Am. Compl. ¶¶ 27, 37.)

Taking this allegation as true, the fact that the receipt in plaintiff's possession bears the words "Merchant Copy" does not make it the merchant's retained copy.  A merchant violates FACTA if he provides a customer with a printed receipt containing a non-truncated credit card number or expiration date.  This is true even if that receipt bears the words "Merchant Copy," where the merchant regularly provides such receipts to customers.  A merchant may not avoid the FACTA truncation requirements simply by labeling every receipt as a "Merchant Copy," essentially what the plaintiff alleges the defendant did.  The statutory language of FACTA imposes liability upon merchants who print more than the last five digits of the card number or the expiration date "upon any receipt provided to the cardholder at the point of the sale or transaction."  15 U.S.C. § 1681c(g)(1).  This unambiguous language does not lend itself to an exception for receipts which bear the words "Merchant Copy."  The plaintiff has stated a claim for willful violation of FACTA.

The cases cited by defendant do not undercut this conclusion.  In Ehrheart v.

---

[2] Although the receipt was not attached to the complaint, the Court may still consider it on this motion to dismiss.  "A complaint is [ ] deemed to include . . . documents that, although not incorporated by reference, are 'integral' to the complaint."  L-7 Designs, Inc. v. Old Navy, LLC, ___ F.3d ____, 2011 WL 2135734, 1 (2d Cir. June 1, 2011) (quotations omitted).  The receipt is referenced in the complaint, and is integral to the plaintiff's cause of action.

Bose Corp., No 07 Civ. 350, 2008 WL 64491, *4 n.4 (W.D. Pa. Jan. 4, 2008), the court stated that FACTA "specifically excludes merchants' copies of receipts from the truncation requirement."  This correctly explains that FACTA does not prohibit the printing of non-truncated credit card information on receipts retained by merchants.  Defendant seeks to read this statement as meaning that FACTA specifically excludes any receipt labeled "Merchant Copy," whether provided to the customer or retained by the merchant.  Ehrheart does not support this reading of FACTA.  Merchants are permitted to keep receipts with full information because later, "if a question arises, such as the validity of a transaction, the identity of the purchaser, or in the case of a return, full information may be necessary."  Ehrheart, 2008 WL 64491 at *4.  That does not free them to provide non-truncated receipts to customers so long as they bear the words "Merchant Copy."

Defendant also relies on Turner v. Matador Argentinian Steakhouse, Corp., No. 08 Civ. 60968, 2008 WL 4935445 (S.D. Fla. Nov. 18, 2008)).  In Turner, the merchant presented both a merchant's copy and customer copy of the receipt for the cardholder to sign. The cardholder mistakenly retained the non-truncated receipt, and the Court concluded that there was no violation of FACTA.  In contrast, Engel alleges that the merchant provided him with the non-truncated receipt, and that in any case both copies of the receipt were identical.

Plaintiff has not stated a claim for a negligent violation of FACTA, however, because he did not allege that he sustained any actual damages.  Statutory damages under 15 U.S.C. § 1681n are available only for willful violations of FACTA.  Under 15 U.S.C. § 1681o, a merchant who negligently violates FACTA is liable in an amount equal to the sum of "any actual damages sustained by the consumer as a result of that violation" plus costs and attorney's fees.  The Amended Complaint recites three "Causes of Action":  (1) Violation of

10

FACTA; (2) Negligence Per Se Based Upon Defendant's Negligent Failure to Comply with FACTA; and (3) Common Law Negligence.  All three claims essentially charge that the defendant violated FACTA, and the only harm alleged in the negligence-based claims is "an exacerbated risk of identity theft" and "an increased risk of identity theft and credit and/or debit card fraud."  (Am Compl. ¶¶ 121, 144.)  The plaintiff has not alleged that he or any other member of the purported class sustained actual damages as a result of defendant's FACTA violations.  Instead, plaintiff requests statutory damages for all three counts in the complaint, including the two counts based upon negligence.  To the extent the plaintiff alleges claims for negligent violation of FACTA, those claims are dismissed.

II.     Class certification

    a.   Legal Standard

The plaintiff has moved to certify the class under Rule 23, Fed. R. Civ. P.  "In determining whether class certification is appropriate, a district court must first ascertain whether the claims meet the preconditions of Rule 23(a) of numerosity, commonality, typicality, and adequacy."  <u>Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.</u>, 546 F.3d 196, 201–202 (2d Cir. 2008).  If these conditions are satisfied, the Court may then grant class certification where it "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  The district court is afforded broad discretion in class certification questions due to the fact that "the district court is often in the best position to assess the propriety of the class [action] and has the ability . . . to alter or modify the class,

create subclasses, and decertify the class whenever warranted." <u>Sumitomo Copper Litig. v.</u> <u>Credit Lyonnais Rouse, Ltd.</u>, 262 F.3d 134, 139 (2d Cir. 2001).

Before certifying a class, "[a] district judge is to assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met." <u>In re Initial Public Offerings Securities Litigation</u>, 471 F.3d 24, 42 (2d Cir. 2006). The Court must resolve any factual disputes relevant to each requirement and rule whether, "based on the relevant facts and the applicable legal standard, that the requirement is met." <u>Id.</u> at 41. "[T]he preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements." <u>Bombardier</u>, 546 F.3d at 202. The Court must still make factual determinations where there is "overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement." <u>Id.</u> However, "in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement." <u>Id.</u>

Certification of a class is proper "only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." <u>Wal-Mart Stores,</u> <u>Inc. v. Dukes</u>, 131 S.Ct. 2541, 2551 (2011) (internal quotations omitted). "Frequently that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim." <u>Id.</u> A merits-related question that arises in assessing whether this named plaintiff's claim meets, among others, the numerosity and typicality requirements of Rule 23 is whether the defendant had a regular business practice of printing and providing to customers non-truncated receipts labeled "Merchant Copy."

The plaintiff does not propose as the class for certification all persons making credit or debit card purchases during a given time period, because all such receipts had non-

truncated card numbers.  Rather, the proposed definition begs the question by defining the class

as those who received receipts with non-truncated numbers:

> All persons to whom Defendant provided an electronically
> printed receipt at the point of sale or transaction, in a transaction
> occurring after December 4, 2006, from any cash register or other
> machine or device that electronically prints receipts for credit card
> or debit card transactions that was in use prior to January 1, 2005
> on which Defendant printed 1) more than the last five digits of the
> person credit card or debit card number, and/or, 2) after June 3,
> 2008, more than the last five digits of the person credit card or
> debit card number and/or the expiration date of the person's credit
> or debit card number.

> All persons to whom Defendant, on or after January 1,
> 2005, provided an electronically printed receipt at the point of sale
> or transaction from a cash register or other machine or device that
> electronically prints receipts for credit card or debit card
> transactions that was first put into use on or after January 1, 2005,
> on which Defendant printed 1) more than the last five digits of the
> person credit card or debit card number, and/or, 2) after June 3,
> 2008, more than the last five digits of the person credit card or
> debit card number and/or the expiration date of the person's credit
> or debit card number.

(Am. Comp. at ¶ 11.)  Defining the class as essentially those customers who have valid FACTA

claims is circular.  Because it would be composed of those customers who were provided non-

truncated receipts, the Court cannot determine that the proposed class is sufficiently numerous

without first determining how many customers received non-truncated receipts.  Similarly,

under the named plaintiff's proposed definition, the class will not be ascertainable unless the

plaintiff proves that the defendant had a regular practice of providing non-truncated receipts.

The complaint alleges that the defendant provided non-truncated receipts to all

customers who made purchases with debit or credit cards during the relevant time period.  The

class should therefore be defined to include all such customers.  Whether the defendant

provided these receipts as a regular practice and whether any FACTA violation was willful are

questions common to the class.  The class should therefore be defined as follows:

> All persons who made in-store purchases from the Defendant
> using a debit or credit card, in a transaction occurring from
> December 4, 2006, through April, 2010.

This definition omits the circular requirement that individuals must have received a non-truncated receipt in order to be class members.  Instead, all customers who made credit or debit card purchases during the relevant time period are class members, and it is a question in common for the class whether the defendant had a regular business practice of providing non-truncated receipts.  There is no need for a subclass of customers who received receipts from machines put into use after January 1, 2005, as proposed by the plaintiff, because there is no evidence that such machines existed.  The plaintiff submitted evidence that all three machines in the defendant's store were put into use prior to January 1, 2005, and were in use until at least April, 2010.  (Robinson Aff. ¶ 6.)  Because the plaintiff has evidence regarding the defendant's sales procedures through April, 2010, and no later, the class period will go from the effective date of FACTA through April, 2010.

In the interest of efficiency, I will examine the Rule 23 requirements under the class definition proposed by the Court.  This Court is empowered to "alter or modify the class, create subclasses, and decertify the class whenever warranted."  <u>Sumitomo Copper</u>, 262 F.3d at 139 (2d Cir. 2001); Rule 23(c)(1)(C), Fed. R. Civ. P.


b.  Ascertainability

"Although Rule 23(a) does not expressly require that a class be definite in order to be certified, Second Circuit courts have implied a requirement that a class be identifiable before it may be properly certified."  <u>Friedman-Katz v. Lindt & Sprungli (USA), Inc.</u>, 270

F.R.D. 150, 154 (S.D.N.Y. 2010).  This requirement is often referred to as "ascertainability."  Id.  "An identifiable class exists if its members can be ascertained by reference to objective criteria."  In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation, 209 F.R.D. 323, 337 (S.D.N.Y. 2002) (internal quotations omitted).  The Court must be able to determine who is in the class and bound by its ruling "without engaging in numerous fact-intensive inquiries."  Bakalar v. Vavra, 237 F.R.D. 59, 64 (S.D.N.Y. 2006).  Class members need not actually be ascertained prior to certification, but each individual's class membership must be ascertainable at some stage in the proceedings.  In re Fosamax Products Liability Litigation, 248 F.R.D. 389, 395–96 (S.D.N.Y. 2008).

The class, as revised by the Court, is readily ascertainable.  The "contours of this class are clearly set forth and class membership can easily be determined."  Friedman-Katz, 270 F.R.D. at 154.[3]  Membership in the class is defined by identifiable objective criteria—all customers who made purchases with credit or debit cards during the relevant time periods.  The class members will be identified based upon business records produced in discovery.  The plaintiff submitted evidence that the defendant maintains its invoice records at a warehouse in Long Island City, New York, and that these invoices contain credit and debit card numbers.  (Robinson Aff., ¶ 14.)  These invoices can effectively be used to identify the class members, without a fact-intensive inquiry.  The proposed class therefore meets the requirement of ascertainability.

---

[3] In Friedman-Katz, the Court certified a class that was essentially defined as those customers who received a receipt which violated FACTA.  In that case, unlike here, there was no dispute that all receipts printed by the defendant during the relevant time included the expiration date in violation of FACTA.  That class definition therefore did not require the Court to decide the merits of the dispute in order to determine whether the Rule 23 requirements were satisfied.

c.  Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  A class composed of more than forty members will generally satisfy this requirement.  See Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995).  The plaintiff alleges that the class will number in the thousands.  (Am. Comp. ¶ 12.)  A former employee estimates that the defendant processes approximately three to five thousand debit or credit card transactions per year.  (Robinson Aff., ¶ 23.)  The defendant has not disputed this estimate.  Under the Court's proposed class definition, the numerosity requirement is comfortably satisfied.

d.  Commonality

The Court must also find that "there are questions of law or fact common to the class."  Rule 23(a)(2).  The Supreme Court recently examined the commonality requirement in Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541 (2011).  The Court emphasized that commonality "does not mean merely that [class members] have all suffered a violation of the same provision of law."  Id. at 2551.  Rather, the class members' claims "must depend upon a common contention . . . which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  Id.  The Court must consider not only the common questions raised by the class, but "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  Id. (quoting Richard A. Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L.Rev. 97, 132 (2009)).  "'A single common issue of law may be sufficient to satisfy the commonality requirement' where the common question is 'at the core of the cause of action

16

alleged.'" <u>MacNamara v. City of New York</u>, No. ___ F.R.D. ____, 2011 WL 1991144, *8 (S.D.N.Y. May 19, 2011) (quoting <u>Friedman–Katz</u>, 270 F.R.D. at 155).

Though the issue has not been extensively examined in this Circuit, courts in at least one other circuit "have routinely found that FACTA cases meet the commonality requirement." <u>Rogers v. Khatra Petro, Inc.</u>, No. 2:08-CV-294, 2010 WL 3894100, 4 (N.D. Ind. Sept. 29, 2010). The class members' claims in this action depend upon common questions of fact and law. Factually, the claims depend upon the common contention that the defendant had a regular business practice of providing non-truncated receipts in violation of FACTA. Also, because the complaint does not state a claim for negligent violation of FACTA, "the question of whether Defendant acted willfully is central both to Plaintiff's individual claim and to the claims of the class as a whole." <u>Shurland v. Bacci Cafe & Pizzeria on Ogden, Inc.</u>, 259 F.R.D. 151, 159 (N.D. Ill. 2009).

The critical questions of the defendant's business practices and willfulness are common to all class members, and are likely to generate common answers which drive the resolution of the litigation. <u>Wal-Mart</u>, 131 S.Ct. at 2551. The defendant does not attack the commonality of the class claims by, for example, presenting evidence that each salesperson had discretion to determine what type of receipt to print or that different machines had different settings. Rather, Scully's submissions confirm that the fact questions are well-suited for common resolution, by arguing that its regular practice was to provide customers with truncated receipts. This is not an argument that individual class members are situated differently, but that all of their claims fail for a common reason. This dispute is susceptible to a common answer which will apply to all class members.

Common questions of law also predominate. All of the surviving class claims

are brought under FACTA, and plaintiff seeks only statutory damages.  Scully asserts that the "Merchant Copy" label on a receipt provides a complete defense, but this is a legal question common to all class members.  See Keller v. Macon County Greyhound Park, Inc., 2011 WL 1085976, *6 (M.D. Ala. 2011).  As the Keller Court noted:

> Because the point of sale transactions occurred several years ago, there is a fair probability that many of these consumers have lost or disposed of the customer copies of the receipts. The legal issue of whether FACTA violations can be proved based upon the merchant copies of the receipts is one that will be common to many, if not most, of the members of the class.

Id.  The core questions of law and fact in this action are common to the class, and the Rule 23(a)(2) requirement is satisfied.

As discussed above, because plaintiff does not allege actual damages, he does not state a claim for negligent violation of FACTA.  Moreover, the complaint seeks only statutory damages for the alleged willful violation.  Therefore, the class definition need not exclude class members who suffered actual damages.  Cf. Keller, 2011 WL 1085976 at *3 ("For the few individuals who may have been unfortunate enough to have suffered actual damages caused by the printing of FACTA non-compliant receipts, those individuals may be identified easily and excluded from the class.").  However, in crafting the class notice, plaintiff must make class members aware that this suit does not seek actual damages, so that any members who wish to seek such damages may opt out.

e. Typicality

Rule 23(a)(3) requires the plaintiff to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  Rule 23(a)(3), Fed. R.

18

Civ. P.  To establish typicality under Rule 23(a)(3), the party seeking certification must show that "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  In re Flag Telecom Holdings, Ltd. Securities Litigation, 574 F.3d 29, 35 (2d Cir. 2009) (internal quotations omitted).  The Court is "required to find, by a preponderance of the evidence, that he is . . . not subject to any unique defenses."  Id. (quotations omitted).[4]

Engel's claim is typical of the claims of the class.  Under his theory of the case, all customers paying with credit or debit cards received non-truncated receipts labeled "Merchant Copy," as he did.  Each class member's claim arises from the same alleged wrongful conduct, and the defendant is not subject to any unique defenses.

    f.   Adequacy

Finally, Rule 23(a)(4) requires that the representative plaintiff "will fairly and adequately protect the interests of the class."  In order for a class representative to meet this requirement, "the class members must not have interests that are antagonistic to one another."  Brown v. Kelly, 609 F.3d 467, 479 (2d Cir. 2010) (internal quotation omitted).  The Court must also determine that "plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  Flag Telecom, 574 F.3d at 35 (internal quotation omitted).

There is no indication that Engel has any interests antagonistic to the other class members.  Engel's counsel, Squitieri & Fearson LLP, has adequately represented the

---

[4] Some courts have examined the plaintiff's vulnerability to "unique defenses" under the rubric of Rule 23(a)(4), adequacy, rather than typicality, but the difference is immaterial.  See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir. 1990).  ("Regardless of whether the issue is framed in terms of the typicality of the representative's claims or the adequacy of its representation, there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." (citations omitted)).

representative plaintiff in these proceedings up to this point, and is qualified and able to conduct the litigation.  Engel and his counsel are adequate to represent the interests of the class.

g.   Rule 23(b)(3), Predominance and Superiority

Once the court finds that all of the Rule 23(a) prerequisites are met, it must also determine whether class certification is proper under Rule 23(b).  Plaintiff seeks class certification under Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Rule 23(b)(3), Fed. R. Civ. P.  "Class-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  UFCW Local 1776 v. Eli Lilly and Co., 620 F.3d 121, 131 (2d Cir. 2010).

The core legal and factual issues in this action do not require individualized determination, but can be resolved through generalized proof applicable to the class.  As described above, the parties dispute what the defendant's business practice was when printing receipts.  The resolution of this issue applies to all class members' claims.  Because the complaint seeks statutory damages, there will be no need for individualized damages determinations.  The defendant has raised no other issue that could require individualized determination.

A class action is superior to the other available methods for fairly and efficiently adjudicating this controversy.  This is a consumer case in which each class member has a small

claim, one hundred to one thousand dollars in statutory damages.  Where proceeding

individually would be prohibitive due to the minimal recovery, "the class action device is

frequently superior to individual actions."  Seijas v. Republic of Argentina, 606 F.3d 53, 58 (2d

Cir. 2010).  "The policy at the very core of the class action mechanism is to overcome the

problem that small recoveries do not provide the incentive for any individual to bring a solo

action prosecuting his or her rights."  Amchem Products, Inc. v. Windsor, 521 U.S. 591, 617

(1997) (internal quotations omitted).  One Circuit Court has concluded that class actions are

superior methods for adjudicating FACTA claims.  Bateman v. American Multi-Cinema, Inc.,

623 F.3d 708, 713 (9th Cir. 2010) (reversing the district court's finding that a class action was

not superior due to "the disproportionality between the potential liability and the actual harm

suffered, the enormity of the potential damages, or [the defendant's] good faith," and holding

that a class action is the superior method).  A panel of the Fourth Circuit reached the same

conclusion in a non-precedential opinion.  Stillmock v. Weis Markets, Inc., 385 Fed. Appx.

267, 274 (4th Cir. 2010).  I agree that the class action is a superior method for resolving this

controversy, due to the low damages incentive for individual litigation and the consistency of

results encouraged by class actions.[5]


       h.  Appointment of Class Counsel

          Engel asks the court to appoint his counsel, Squitieri & Fearson, LLP, as class

counsel pursuant to Rule 23(g), Fed. R. Civ. P.  In appointing class counsel, a court must

consider the following: "(1) the work counsel has done in identifying or investigating potential

---

[5] Although I conclude that a class action is a superior method for resolving these claims, the question of whether a large statutory damages verdict would be excessive where no plaintiff was actually harmed is not yet ripe.  Harris v. Mexican Specialty Foods, Inc., 564 F.3d 1301, 1310 (11th Cir. 2009).

claims in the action, (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action, (3) counsel's knowledge of the applicable law, and (4) the resources that counsel will commit to representing the class."  Rule 23(g)(1)(A), Fed. R. Civ. P.  The court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class."  Rule 23(g)(1)(B), Fed. R. Civ. P.

Defendant does not dispute that Squitieri & Fearson has the requisite experience, knowledge, and resources to represent the class in this action.  Defendant instead argues that counsel is "not appropriate to represent the non-existent class as they had to have knowledge that Plaintiff did not have any evidence of a FACTA violation yet proceeded with the litigation and motion to certify class."  (Opp. Br. at 11.)  As discussed above, Engel's counsel did have evidence of a FACTA violation.  Defendant offers no other reason why Squitieri & Fearson should not be appointed class counsel.  Counsel has investigated and actively litigated this case from inception, and has experience in conducting nationwide class actions.  (Goljan Decl., Exh. 4.)  Squitieri & Fearson is therefore appointed as class counsel.


CONCLUSION

For the foregoing reasons, defendant's motion to dismiss (Docket No. 64) is GRANTED as to the claim for negligent violation of FACTA, and otherwise is DENIED.  Plaintiff's motion for class certification (Docket No. 50) is GRANTED.

The conference currently scheduled for September 16, 2011 is adjourned to Monday, October 31, 2011, at 2:00 p.m.  Prior to the conference, the parties are ordered to meet and confer face to face for no less than one hour in a good faith attempt to resolve or narrow any outstanding discovery disputes and agree on an amended case management plan in light of

this Memorandum and Order.  Counsel for the parties are directed to submit a joint letter by

October 7, 2011 (1) certifying that they have complied with the foregoing meet and confer

requirement; (2) attaching a proposed revised case management plan; (3) stating each side's

position on any disputed discovery issues; and (4) setting forth the specific relief each side

seeks, together with any citations to case law support.

      SO ORDERED.

                                                                 P. Kevin Castel
                                             United States District Judge

Dated: New York, New York
       September 13, 2011